UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MATILDA L. GARNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:18cv211 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since August 31, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; degenerative disc disease of the thoracic and lumbar spines with radiculopathy; bipolar I disorder with psychotic features; bipolar affective disorder, depression with psychotic features; anxiety with panic attacks; posttraumatic stress disorder; personality disorder not otherwise specified; and alcohol and cannabis abuse disorder, in sustained remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand and walk in combination for 6 hours in an 8-hour workday; sit and stand alternatively, provided that at one time, the claimant can only sit for 30 minutes; stand for only 45 minutes; and walk for about 1 block, and further provided that the claimant is in the new position for one minute or less before resuming the prior position; occasionally balance, kneel, crouch, crawl, stoop (but never stooping below the waist), and climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently handle and fingering with either upper extremity; no exposure to wetness, unprotected heights, or dangerous machinery; no concentrated exposure to respiratory irritants such as fumes, odors, dusts, and gases; limited to simple, routine, and repetitive work; occasional interaction with coworkers and supervisors; no interaction with the public; and limited to work that allows the claimant to be off task 5 percent of the workday, in addition to regularly scheduled breaks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 20, 1969 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the laimant is "not disabled." whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23- 32 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on November 21, 2018. On December 27, 2018, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 25, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other

> work within the economy? An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff filed applications for Title II and Title XVI benefits on March 19, 2015, alleging disability beginning on August 31, 2013. (R. at 213-225) The Disability Determination Bureau (DDB) denied Plaintiff's claims on May 8, 2015. (R. at 127-134) Plaintiff requested reconsideration, but again was denied on June 17, 2015. (R. at 137-151) Plaintiff filed a request for an administrative hearing on June 26, 2015. (R. at 152-166) On February 7, 2017, Plaintiff appeared in Indianapolis, Indiana, before ALJ T. Whitaker of the Indianapolis, Indiana, Office of Disability Adjudication and Review (ODAR). (R. at 43-76) On April 5, 2017, ALJ Whitaker issued an unfavorable decision, concluding claimant's impairments permitted the performance of other work. (R. at 18-36) Plaintiff filed a request for review by the Appeals Council of the Office of Disability Adjudication and Review, but the Appeals Council denied her request on May 5, 2018. (R. at 1-13) Plaintiff then timely filed a complaint with the United States District Court for the Northern District of Indiana.

Plaintiff was born on October 20, 1969 and was 43 years old at the time of the alleged onset date. Plaintiff has obtained an eighth grade education and has previous work experience as a Certified Nursing Assistant (CNA). (R. at 30)

Plaintiff's medical records indicate that she suffered from an L5 anterior compression

5

fracture in 2010. (R. at 385) On May 16, 2013, Plaintiff presented to her former primary care physician (PCP) Dr. Mark Tatara with low back pain and radiating pain down both legs. (R. at 315-317) Plaintiff also complained of leg weakness, and instability while walking. *Id*. Dr. Tatara's notes reference an MRI of Plaintiff's previous L5 anterior compression fracture and the "debilitating pain" from which she continued to suffer. *Id*. Dr. Tatara referred Plaintiff to Dr. Mark Zolman for further care of her back pain. *Id*.

On February 25, 2015, Plaintiff was admitted to Adams County Memorial Hospital for worsening depression and bipolar disorder. (R. at 347-357) Plaintiff was kept in the hospital until March 3, 2015, for psychiatric treatment. (R. at 357) At the time of this hospitalization Plaintiff had previous diagnoses of bipolar affective disorder and post-traumatic stress disorder (PTSD). (R. at 347) During her hospitalization, Plaintiff experienced voices, visions, and paranoia. (R. at 350) These psychiatric symptoms also caused anxiety, shortness of breath, chest pain, palpitations, tremors, nausea, and diarrhea. *Id*. Plaintiff was given additional medications during her hospitalization. (R. at 357) Adams County Memorial Hospital referred Plaintiff to Park Center Inc. following her discharge. *Id.*

On March 13, 2015, Plaintiff followed up with Park Center Inc. for her initial assessment. (R. at 369) Plaintiff stated that she was having trouble adjusting after the sudden loss of her husband, which caused her admission to Adams County Memorial Hospital. *Id.* Dr. Julie Mazur noted the following about Plaintiff's condition: marked adjustment problems, moderate affect regulation problems, moderate attachment issues, moderate dissociation, and moderate issues with anger control. (R. at 373-376) Dr. Mazur noted that Plaintiff's dissociation can include amnesia, persistent or perplexing difficulties with forgetfulness, or frequent daydreaming or

trance-like behavior. (R. at 373-374) Specifically, Plaintiff would forget what she was doing or misplace objects frequently, which caused additional stress and anger. *Id*. Dr. Mazur also stated that Plaintiff's limitations include a severe degree of work problems. (R. at 376) Specifically, aggressive behavior toward peers or superiors, severe attendance problems, and a high risk of firing. *Id*. Dr. Mazur diagnosed Plaintiff with having severe symptoms or serious impairment in social occupational, and school environments. (R. at 377)

On May 5, 2015, an independent disability examiner, Dr. Langhofer, examined Plaintiff. (R. at 385-391) Dr. Langhofer referenced the L5 compression fracture and existence of the previous MRI. (R. at 385) However, it appears that Dr. Langhofer did not review any of Plaintiff's previous imaging. Dr. Langhofer indicated that Plaintiff's limits were: walking for 30 minutes, standing for 20 minutes, and one flight of stairs. (R. at 386) Plaintiff also experienced intense low back pain as a result of a straight-leg raise in the supine position. (R. at 388) Dr. Langhofer's examination showed that Plaintiff experienced reduced strength in her right lower extremity. *Id.* Dr. Langhofer stated that Plaintiff's back pain is considered a significant daily limitation and it is "unlikely to improve via natural course." (R. at 391) On that same day, Plaintiff also had a mental health evaluation with Dr. Glenn Davidson Jr. (R. at 394-397) Dr. Davidson opined that Plaintiff "impresses as being mildly scattered" and shows mild difficulties with immediate memory. (R. at 396)

On September 20, 2016, Plaintiff saw her current PCP, Dr. Yadagiri Jonna because of her persistent low back pain. (R. at 426-429) Dr. Jonna diagnosed the pain as acute bilateral low back pain without sciatica and ordered further evaluations. (R. at 429) That same day, Plaintiff had an x-ray of her lumbar spine. (R. at 44-444) The x-ray showed some Schmorl's nodes involving the

7

end plates of the lower thoracic and upper lumbar vertebrae. *Id.* On December 16, 2016, Plaintiff had an MRI at Bluffton Regional Medical Center to assess the chronic low back pain. (R. at 398-400) The MRI showed an "eccentric annular bulge or disc herniation extending into the left neural foramen at L3-4 abutting the left L4 neural root." (R. at 399) The MRI also showed mild bilateral arthropathy from L5 to S1. *Id*.

On February 7, 2017, Plaintiff appeared in Indianapolis, Indiana, before ALJ T. Whitaker. (R. at 43-76) Plaintiff began her testimony by describing her functional abilities in response to the ALJ's questions. (R. at 47) Plaintiff stated that she could sit in an office chair for approximately twenty minutes before she would be in pain. *Id.* Plaintiff testified that while sitting she leans forward on her arms to help relieve the back pain. (R. at 62) Plaintiff noted that having to lean forward would effect the amount of time she would be able to sit and use her hands. *Id*. Plaintiff also stated that she would only be able to stand between thirty to forty-five minutes, and can only walk one block. *Id*. Plaintiff also noted that she does not attempt to lift her grandson who weighs approximately 30 pounds. (R. at 48) She also does not attempt to stoop over due to her back pain. *Id*. Furthermore, Plaintiff opined that she does some household chores. (R. at 53) Specifically, she sweeps, does dishes, laundry, and helps prep food for meals. (R. at 53-54)

Plaintiff stated that lifting causes pain in her right arm, and she has had issues with tendinitis in her right shoulder. (R. at 49) Plaintiff stated that the tendinitis in her shoulder blades was from her previous work as a CNA. *Id.* Plaintiff also has bursitis in her right leg. (R. at 50) Plaintiff testified that she has issues with her stomach bloating and causing pain. *Id.* Plaintiff takes regular strength Tylenol everyday, every six to eight hours to ease these ailments. (R. at 51-52)

Plaintiff also discussed her past work. (R. at 46) She was a CNA at River Terrace until 2013. (R. at 46) Plaintiff has not been employed since she left River Terrace. (R. at 46)

The vocational expert (VE) then testified about Plaintiff's past work. (R. at 64-65) The VE stated that all of Plaintiff's past work was as a CNA. (R. at 64) A CNA position is classified as semi-skilled, medium work. *Id.* The ALJ then presented the following hypothetical:

> [A] hypothetical person who had a vocational profile of being a younger person with a limited education and the same past relevant work experience you've described for this particular claimant and they had a residual functional capacity – they could perform a range of work at the light exertion level, such that they could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The person could stand and walk, in combination for six hours out of an eight-hour work day. The person needs work that would allow them to sit or stand alternatively, provided that, at one time, they could sit for 30 minutes, stand for 45 minutes, and walk about one block and further provided that they'd be in the new position 1 minute or less before resuming the prior position. (R. at 65).

The VE testified this hypothetical individual could not perform past work. (R. at 66). However, the VE stated such an individual could perform work as a merchandise marker, subassembler, or small products assembler, all of which were light and unskilled. (R. at 66-67) However, the VE opined that if the individual were limited to only occasional use of their hands, they would not be able to perform any light work. (R. at 68)

Plaintiff's attorney ended the testimony stating that Plaintiff was restricted to occasional handling and fingering, which would preclude her ability to work under the hypothetical provided by the ALJ. (R. at 71) As such, counsel explained that Plaintiff should be found disabled. *Id.*

On April 5, 2017, ALJ Whitaker issued an unfavorable decision. (R. at 18-32) At Step One, ALJ Whitaker found Plaintiff had not engaged in substantial gainful activity since August 31, 2013, the alleged onset date. (R. at 23) At Step Two, ALJ Whitaker concluded Plaintiff

suffered from degenerative disc disease of the thoracic and lumbar spines with radiculopathy, bipolar I disorder with psychotic features, bipolar affective disorder, depression with psychotic features, anxiety with panic attacks, post-traumatic stress disorder, and obesity. (R. at 23) At the first half of Step Three, ALJ Whitaker found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 CFR 404, Subpart P, Appendix 1. (R. at 24) At the second half of Step Three, ALJ Whitaker concluded that Plaintiff had the ability to perform light work with additional limitations. (R. at 26) At Step Four, ALJ Whitaker concluded Plaintiff was unable to perform any of her past relevant work (R. at 30) At Step Five, ALJ Whitaker determined that Plaintiff was capable of performing other work as a merchandise maker, sub assembler, and small product assembler. (R. at 31)

In support of remand, Plaintiff first argues that the ALJ erred in offering only perfunctory listing analyses and failing to consult a medical expert in regard to whether Plaintiff's combined impairments met or equaled the relevant listings. At Step Three, an ALJ is required to determine whether the claimant meets or equals any of the listed impairments found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(iii). For each listed impairment, there are objective medical findings and other specific requirements which must be met to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(3), 416.925(c)(2)-(3). When a claimant satisfies all such criteria, that person is deemed presumptively disabled and entitled to benefits. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(a), 416.925(a), 404.1525(c)(3) and 416.925(c)(3). Even if a claimant's listed impairment does not satisfy each requirement of the specified elements of the listing, it can result in a finding of disability if the record contains "other findings related to [the]

10

impairment that are at least of equal medical significance to the required criteria" or if "the findings related to [a combination of] impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §§ 404.1526, 416.926. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668. The Seventh Circuit has held that "the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

In the present case, the ALJ briefly mentioned Musculoskeletal listing 1.04(a), however she never acknowledged Plaintiff exhibited that listing's threshold imaging criteria of nerve root compromise. (R. at 398-399) Instead, the ALJ perfunctorily stated, "Listing 1.04 is not met because there is no supporting evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication with the specific criteria in accordance with the listing." (R. at 24) As Plaintiff explains, such a perfunctory analysis does not provide this Court with any ability to engage in meaningful review because it dismisses Plaintiff's potential meeting or equaling of the listing solely on a basis which is inaccurate because Plaintiff's MRI did, in fact, demonstrate compromise of the L2 and L3 nerve roots. Moreover, the ALJ's evaluation of listing 1.04(a) omits the fact she exhibited every criteria required to meet (rather than equal) that listing of presumptive disability. (R. at 24) Plaintiff's providers observed her exhibition of nearly all of listing 1.04(a)'s criteria at some point in the record: compromise of the L4 nerve root (R. at 398-399, 426); anatomic distribution of pain (R. at 315, 385, 388, 398, 410); limited range of motion of the spine (385); motor loss/ disturbed gait (R. at 315); upper and lower

extremity weakness (R. at 315, 388); sensory loss and numbness (R. at 315, 443), and a positive straight leg raise on the right side (R. at 388). Thus, Plaintiff argues that the ALJ's failure to confront any of the criteria suggestive of Plaintiff's equaling of listing 1.04(a), especially the threshold imaging of nerve root compromise, resulted in the absence of the requisite logical and accurate bridge between the evidence and her conclusion Plaintiff did not meet or medically equal a listing of presumptive disability. Plaintiff did not need to exhibit all of the listing criteria to medically equal a listing. That the Plaintiff never exhibited a particular item of the listing criteria is a perfectly legitimate explanation of why she does not <u>meet</u> listing 1.04(a), but it does not provide this court with any ability to review whether her combined impairments <u>equaled</u> the listing 1.04(a). Plaintiff exhibited all of the listing 1.04(a) criteria at some point in the record, but the ALJ did not confront this multitude of "meets" criteria. The ALJ failed to even distinguish her "meets" analysis from her analysis of whether Plaintiff, who exhibited every criteria necessary to meet the listing at least once, medically equaled listing 1.04(a). This was further error, and it resulted in her failing to fully consider Listing 1.04(a), for which Plaintiff exhibited all of the necessary criteria. She failed to confront any of this positive listing criteria or explain why the presence of all the listing criteria, on at least one occasion, in combination with Plaintiff's additional musculoskeletal impairments could not demonstrate equivalence to Listing 1.04(a). As a result, her listing conclusion is unreviewable and not connected to the evidence through logical evaluation.

  Plaintiff further argues that the Commissioner also committed reversible error in that no medical expert, even the state agency physicians, ever considered whether Plaintiff's combined impairments medically equaled listing 1.04(a). The Seventh Circuit has held that, "Whether a

claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." Citing 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings .... We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96-6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), reinstating S.S.R. 83-19. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); citing *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989) (concluding that ALJ complied with requirement of Social Security Ruling 83-19 that he consider a consulting physician's opinion regarding medical equivalency).

In the present case, although the state agency physicians explicitly named listing 1.04(a), there was no indication of their knowledge that Plaintiff exhibited 1.04(a)'s threshold imaging criteria of nerve root or spinal cord compromise. (R. at 77) The state agency physicians failed to mention the MRI of Plaintiff's L5 compression fracture. Additionally, the state agency physician's disability determination was made prior to the receipt of Plaintiff's most recent threshold imaging evidence from December 2016. Thus, the state agency physicians were unaware of threshold evidence which would have supported their consideration of listing 1.04(a). Therefore, the ALJ's discussion of the December 2016 MRI and consideration of the whether Plaintiff's impairments equal listing 1.04(a) was not based on a physician's opinion.

Because the state agency physicians were unaware of the aforementioned evidence the ALJ would have been required to re-submit the question of medical equivalence to them. S.S.R.

96-6P further requires "an administrative law judge and the appeals council must obtain an updated medical opinion from a medical expert" when "additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." If the MRI evidence, in the opinion of the ALJ, was not capable of changing the opinion of the state agency physicians, she would have needed to support such a finding with a logical and accurate explanation. Plaintiff concludes that the Agency's failure to submit evidence that the Plaintiff potentially medically equals the intent of listing 1.04(a) to medical expert scrutiny violates both its own regulations and Seventh Circuit precedent. *Barnett*, 381 F.3d at 670.

In response, the Commissioner makes the mistake of conflating what is required to meet a listing of presumptive disability with what is required to medically equal the intent of a listing of presumptive disability. While Plaintiff certainly does not concede she did not exhibit each of the required criteria to meet listing 1.04(a), the Commissioner's contention she had to do so in order to medically equal the intent of the listing is wholly contradicted by her own regulations. Even if a claimant's listed impairment does not satisfy each requirement of the specified elements of the listing, it can result in a finding of disability if the record contains "other findings related to [the] impairment that are at least of equal medical significance to the required criteria" or if "the findings related to [a combination of] impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §§ 404.1526, 416.926. Simply put, whether Plaintiff exhibits each of the criteria required to meet the listing is simply immaterial to whether her condition medically equaled the listing. The ALJ was required to engage in a more-than-

perfunctory analysis of both whether Plaintiff met the listing criteria and whether her combined impairments medically equaled the listing criteria. Here, the ALJ did neither but also erroneously allowed her assessment of whether Plaintiff met the listing to double as her analysis regarding of whether her combined impairments were medically equivalent to the listing.

It is Plaintiff's position that the ALJ's putting forward a wholly inaccurate reasoning for concluding Plaintiff did not meet or medically equal the listing deprives this Court of the ability to engage in meaningful review of such a conclusion as it lacks the requisite "logical and accurate" bridge to the evidence.

The Commissioner argues that it is purely discretionary as to whether an ALJ must seek review of a medical expert when complex medical evidence which implicates a listing emerges after state agency physicians have reviewed the record. However, very recently, the Seventh Circuit rejected this same notion. In *McHenry v. Berryhill*, the Court held the ALJ erred in taking it upon himself to interpret MRI evidence demonstrating nerve root compromise which emerged after state agency physicians reviewed the claimant's records as not meeting or medically equaling the listing instead consulting a doctor on the matter. *McHenry v. Berryhill*, No. 18-1691, 2018 U.S. App. LEXIS 36511 (7th Cir. Dec. 26, 2018) In the instant case, the ALJ's action with regard to this issue mirrors that of the ALJ in *McHenry*. Despite the emergence of new MRI evidence which indicated listing threshold imaging of nerve root compromise after the state agency doctors had assessed Plaintiff's records and issued their opinion, the ALJ impermissibly interpreted the new evidence herself and inaccurately recounted the MRI findings as not showing nerve root compromise. (R. at 24) Clearly, remand is necessary so a medical expert may consider the question of medical equivalence to the listing in light of the existence of threshold imaging

which the state agency physicians never observed prior to issuing their opinion.

Next, Plaintiff argues that The ALJ erred when she relied on the opinions of state agency physicians who were unable to review nearly two years of Plaintiff's medical records including objective MRI evidence which indicated threshold criteria for a presumptive listing of disability. As recently as February of this year, the Seventh Circuit has held that "an ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F. 3d 722, at 728 (7th Cir. 2018); citing *Stage v. Colvin*, 812 F. 3d 1121,1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment")

In *Goins v. Colvin*, the Seventh Circuit held that an ALJ's "uncritical acceptance" of the state agency physician's conclusions was reversible error because "fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence. 764 F. 3d 677, 680 (7th Cir. 2014). Similarly, in this case the ALJ accepted the findings of the state agency consultant knowing that they never saw Plaintiff's MRI. On May 6, 2015, state agency physician's assessed Plaintiff's RFC. State agency physician's reviewed the records for Plaintiff's Request for Reconsideration on June 6, 2015. On December 16, 2016, Plaintiff had an MRI that showed nerve root compromise. Nothing in the record indicates that this new evidence was presented to state agency physicians. The result was that the ALJ unilaterally interpreted the MRI and nearly two years of other complex medical records and, without any informed medical doctor's support, decided Plaintiff's current residual functional capacity. The state agency physician's assessed neither of Plaintiff's MRI results, the

16

most recent of which includes evidence of nerve root compromise. (R. at 398-399)

Because the state agency physician's opinion could have been different based on the emergence of such new and material evidence, the ALJ should have subjected it to medical expert scrutiny. Instead, the ALJ considered the new evidence to make her determination. In *Moreno*, the court stated "[w]e have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." 882 F.3d 722, at 729 (7th Cir. 2018); citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("remanding because the ALJ improperly 'played doctor'"); and *Goins*, 764 F.3d at 680 ("prohibiting ALJs from 'playing doctor' by summarizing the results of a medical exam without input from an expert") As a consequence of her omission, remand is necessary so a medical expert may interpret Plaintiff's MRI and opine on its significance with regard to her limitations.

Next, Plaintiff argues that the ALJ further erred when she failed to adequately account for her own findings of time off task as part of Plaintiff's RFC to perform light work and her Step Five hypothetical questions to the vocational expert. Because the Commissioner bears the burden of proof at Step Five, an ALJ is required to orient the witness to the totality of a claimant's limitations. "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F. 3d 614, 619 (7th Cir. 2010).

In *Varga v. Colvin*, the Seventh Circuit found that there was medical evidence in the record to support the claimant's moderate limitations in concentration, persistence or pace. 794 F. 3d 809, 814 (7th Cir. 2015). However, the ALJ failed to address those difficulties in his hypothetical question to the VE. "Because a hypothetical question posed to a VE must

incorporate all of the claimant's limitations supported by the medical record . . .," the Seventh Circuit held that the ALJ committed a reversible error. *Id*.

In the present case the ALJ did not properly account for her own findings of Plaintiff's off task limitations in presenting hypothetical questions to the vocational expert. (R. at 65-66) The ALJ effectively allowed Plaintiff the ability to take an unlimited number of one-minute breaks throughout the workday, "sit and stand alternatively, provided that at one time, the claimant can only sit for 30 minutes; stand for only 45 minutes; and walk for about 1 block, and further provided that the claimant is in the new position for one minute or less before resuming the prior position . . ." (R. at 26) Additionally, the ALJ stated that the Plaintiff is "limited to work that allows the claimant to be off task 5 percent of the workday." *Id*. The ALJ stated that the off task time is to account for "pain and acute exacerbations related to anxiety and depression." (R. at 29) According to the former limitation, if the Plaintiff needed to take a total of 25 one-minute position-change breaks in one workday to change positions she would be off task over 5 percent of the time for the whole day. The ALJ's limitation to 5 percent off task for the whole day is contradictory of her previous limitation allowing for unlimited one-minute position change breaks. Such a contradictory residual functional capacity fails to communicate the ALJ's finding of off-task limitations to the vocational expert. Such a residual functional capacity renders the vocational expert unable to determine whether the Plaintiff had unlimited one-minute position change breaks or only a total of five percent time which could be spent off task.

Moreover, it appears the ALJ's finding of off task limitations for 5 percent of the workday was not based on any state agency opinion, but again only her own interpretation of the highly complex medical evidence in the record. Social Security requires that an ALJ must account for all

18

of a claimant's limitations in assessing the RFC and presenting hypothetical questions to the vocational expert. (SSR 96-8p) However, there is no evidence or explanation as to how the ALJ determined the Plaintiff's limitation of 5 percent off task. The ALJ stated that the off task time is to account for "pain and acute exacerbations related to anxiety and depression." (R. at 29) The ALJ's conclusion of five percent off task is totally arbitrary and without any explanation whatsoever. Consequently, such a conclusion lacks the requisite logical and accurate bridge to the medical evidence in the record. Remand is necessary so the ALJ may support her finding of time off task with substantial evidence, and clarify how often Plaintiff would be off task for the vocational expert.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion .

Entered: March 22, 2019.

s/ William C. Lee
William C. Lee, Judge
United States District Court